**PER GROUP, L.P., Medical Media Holdings, LLC, and Tiba Oncology, L.P., Appellants**

**v.**

**DAVA ONCOLOGY, L.P. and Vinay Jain, M.D., Appellees.**

**In re PER Group, L.P., Medical Media Holdings, LLC, and Tiba Oncology, L.P.**

**No. 05–08–01582–CV.**

Court of Appeals of Texas, Dallas.

Aug. 19, 2009.

Rehearing Overruled Oct. 7, 2009.

T. Ray Guy, Weil, Gotshal & Manges LLP, Dallas, TX, for appellants.

John Eric Gambrell, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Dallas, TX, for appellees.

Before Justices MORRIS, RICHTER, and LANG–MIERS.

## OPINION

Opinion By Justice LANG–MIERS.

This is an interlocutory appeal and petition for writ of mandamus from the trial court's orders denying a motion to compel arbitration and enjoining appellants from arbitrating certain claims against appellees. We consolidated the two proceedings. *See In re Valero Energy Corp.*, 968 S.W.2d 916, 916–17 (Tex.1998) (orig. proceeding) (per curiam). We reverse the trial court's order denying appellants' motion to compel arbitration, vacate the temporary injunction, and remand to the trial court for further proceedings. We dismiss the petition for writ of mandamus.

### BACKGROUND

Vinay Jain, M.D. founded Physicians' Education Resource, L.P. and Cancer Information Group, L.P. In July 2005, Medical Media Holdings, LLC acquired the assets of Dr. Jain's businesses. In connection with the acquisitions, Dr. Jain became a member of Medical Media Holdings.[1] He also executed an Employment Agreement with Medical Media Holdings and its wholly-owned subsidiary PER Media, now known as PER Group, L.P. The Employment Agreement contained noncompete restrictive covenants.

In December 2006, Dr. Jain founded Dava Oncology. Appellants believed Dr. Jain's association with Dava Oncology could be mutually beneficial and agreed to a limited "carve-out" of the restrictive covenants to allow Dr. Jain to pursue certain

---

1. Members shared in the governance and profits of the company.

business endeavors through Dava Oncology. The parties accomplished this by terminating Dr. Jain's employment relationship with appellants and hiring him as a consultant. They memorialized this new relationship in the Consulting & Separation Agreement (the Consulting Agreement). The Consulting Agreement terminated the Employment Agreement and contained a noncompete restrictive covenant and the "carve-out" to that covenant. About three months after executing the Consulting Agreement, the parties agreed to terminate the consulting relationship. They executed a Termination Agreement, which terminated the Consulting Agreement.

After Dr. Jain's relationship with appellants was terminated, a dispute arose over whether Dr. Jain had violated the terms of the noncompete restrictive covenant in the Consulting Agreement. Dr. Jain and Dava Oncology filed a lawsuit against Medical Media Holdings, PER Group, and Tiba Oncology, L.P., a subsidiary of Medical Media Holdings, seeking a declaratory judgment that appellees are not in breach of the Consulting Agreement, but that Medical Media Holdings, PER Group, and Tiba Oncology are. Four days after the lawsuit was filed, Medical Media Holdings filed a demand for arbitration against Dr. Jain. Dr. Jain and Dava Oncology moved to stay the arbitration. The trial court granted appellees' motion to stay arbitration and enjoined Medical Media Holdings from arbitrating any disputes with Dr. Jain. A few days later, Medical Media Holdings and PER Group filed a second demand for arbitration against Dr. Jain and his "Business Entities I–X" seeking relief under all the various agreements executed by the parties. Although Medical Media Holdings did not seek relief against Dr. Jain individually in the second demand for arbitration, it expressly reserved its right to do so. Appellants also filed a motion to compel arbitration of Dr. Jain's and Dava Oncology's claims alleged in the lawsuit. Appellees again filed a motion to stay arbitration. The trial judge denied appellants' motion to compel arbitration and granted the motion to stay arbitration in part. The court denied the motion to stay arbitration with respect to PER Group's claims against Dr. Jain arising out of the Employment Agreement and also stayed the litigation pending arbitration of those claims.

Appellants filed both an interlocutory appeal and a petition for writ of mandamus from the trial court's orders denying their motion to compel arbitration and enjoining them from arbitrating certain claims.

### JURISDICTION

As a threshold matter, we address appellees' contention that we lack jurisdiction to consider the interlocutory appeal and the petition for writ of mandamus. We conclude that we have jurisdiction over both proceedings.

### A. Interlocutory appeal

■ Notice of an accelerated appeal must be filed within twenty days after the judgment or order is signed unless the time for filing the notice is extended. TEX. RS.APP. P. 26.1(b), 26.3. Appellees contend that we do not have jurisdiction over the interlocutory appeal because the notice of appeal from the trial court's order was untimely. We disagree.

Appellants filed a motion with the trial court pursuant to civil procedure rule 306a arguing that they did not receive notice and did not acquire actual knowledge of the October 21, 2008 order enjoining Medical Media Holdings from arbitrating claims against Dr. Jain until December 2, 2008. See TEX.R. CIV. P. 306a(5). The trial court held a hearing and found that appellants

first received notice or acquired actual knowledge of the October 21, 2008 order on December 2, 2008. *See* TEX.R. CIV. P. 306a(4). On December 16, 2008, appellants filed a notice of accelerated appeal from the trial court's October 21, 2008 order. As a result, although the notice was filed more than twenty days after the date the order was signed, the notice of accelerated appeal was filed within twenty days of the date that appellants first received notice or acquired actual knowledge of the October order. *See id.*

Additionally, interlocutory appeal is the appropriate vehicle for appealing the denial of a motion to compel arbitration under the Texas Act. TEX. CIV. PRAC. & REM.CODE ANN. § 171.098(a); *TMI, Inc. v. Brooks,* 225 S.W.3d 783, 790 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). Consequently, we conclude that the notice of appeal was timely and that we have jurisdiction over the interlocutory appeal.

### B. Petition for writ of mandamus

■ Appellees also contend that we do not have jurisdiction over the petition for writ of mandamus because the Consulting Agreement does not contain an arbitration agreement. But whether or not a contract contains an arbitration agreement does not impact our jurisdiction. Indeed, one of the elements the party moving to compel arbitration must prove is that the parties agreed to arbitrate. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.021(a) (Vernon 2005); *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex.2003). And if the party opposing arbitration denies the existence of an agreement to arbitrate, the question is determined by the trial court as a matter of law. TEX. CIV. PRAC. & REM.CODE ANN. § 171.021(b) (Vernon 2005); *J.M. Davidson, Inc.,* 128 S.W.3d at 227. If the trial court decides that question adversely to the party moving to compel

arbitration, the appropriate vehicle for challenging the denial under the Federal Arbitration Act is a petition for writ of mandamus. *In re Poly–America, L.P.,* 262 S.W.3d 337, 345 (Tex.2008) (orig. proceeding).

Appellants moved to compel arbitration and to stay litigation pursuant to the Federal Arbitration Act and, alternatively, the Texas General Arbitration Act. Under the Texas Act, a party may challenge an order denying arbitration through interlocutory appeal. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.098(a)(1) (Vernon 2005). In contrast, under the Federal Act, a party may seek relief from denial of arbitration solely through mandamus. *In re Poly–America, L.P.,* 262 S.W.3d at 345. Appellants pursue both appeal and mandamus in this Court.

■ The Consulting Agreement does not state whether the Federal Act or the Texas Act applies to this suit. The Federal Act generally governs arbitration provisions in contracts involving interstate commerce. *See* 9 U.S.C. § 2 (2009); *see also In re Morgan Stanley & Co., Inc.,* 293 S.W.3d 182, 184 (Tex.2009). "Interstate commerce" includes all contracts "relating to" interstate commerce. *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 754 (Tex.2001) (orig. proceeding). Appellees argue that the Consulting Agreement does not evidence a transaction involving interstate commerce. We disagree.

■ The Consulting Agreement was executed by a Texas resident (Dr. Jain), a Delaware corporation (Medical Media Holdings), and a Delaware limited partnership (PER Group); notice under the contract was to be given to Dr. Jain in Texas and to PER Group and Medical Media Holdings in Rhode Island; and arbitration was required to take place in Chicago, Illinois. Additionally, the record establishes that PER Group and Dr. Jain

provided services pursuant to the Consulting Agreement to "clients throughout the United States" and contemplated "holding meetings on both a nationwide and worldwide scope." We conclude that the Consulting Agreement involves interstate commerce. *See In re L & L Kempwood Assocs., L.P.,* 9 S.W.3d 125, 127 (Tex.1999) (orig. proceeding) (per curiam).

■ The Federal Act, however, does not preempt the Texas Act simply because the contract involves interstate commerce. *In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 778–79 (Tex.2006) (orig. proceeding). The Consulting Agreement states that it "is governed by, and will be enforced under and construed in accordance with, the internal laws of the State of Texas...." The Texas Supreme Court has interpreted similar language as invoking both federal and state law. *Id.* And when both acts apply, the Federal Act will preempt the Texas Act only if the Texas Act is inconsistent with the Federal Act or affects the enforceability of the contract. *Id.* Because the parties do not assert that the Texas Act or state law would subvert the enforcement of the Consulting Agreement, we conclude that we have jurisdiction under both laws. And, because the Federal Act does not preempt the Texas Act, we will apply the Texas Act to our analysis. *Id.*

### ISSUES PRESENTED

Appellants assert that the trial court abused its discretion by (i) refusing to compel Dr. Jain and Dava Oncology to arbitrate their claims; (ii) precluding Medical Media Holdings from asserting any claims in arbitration against Dr. Jain and precluding PER Group from asserting any claims in arbitration against Dr. Jain other than those arising under the Employment Agreement; and (iii) enjoining Medical Media Holdings from asserting any claims in arbitration against Dr. Jain.

### STANDARD OF REVIEW

■ As we have noted, a party attempting to compel arbitration must establish that the parties agreed to arbitrate and that the dispute falls within the scope of the arbitration agreement. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.021(a); *J.M. Davidson, Inc.,* 128 S.W.3d at 227. If the party opposing arbitration denies the existence of an agreement to arbitrate, the question is determined by the court as a matter of law. TEX. CIV. PRAC. & REM.CODE ANN. § 171.021(b); *J.M. Davidson, Inc.,* 128 S.W.3d at 227. We review the trial court's legal determinations de novo and its factual determinations under a "no evidence" standard. *Trammell v. Galaxy Ranch School, L.P. (In re Trammell),* 246 S.W.3d 815, 820 (Tex.App.-Dallas 2008, no pet.). In reviewing the trial court's factual determinations, we must credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* (citing *Kroger Tex. Ltd. v. Suberu,* 216 S.W.3d 788, 793 (Tex.2006) and *City of Keller v. Wilson,* 168 S.W.3d 802, 807 (Tex.2005)). However, when the facts relevant to the arbitration issue are not disputed, we are presented only with issues of law and we review the trial court's order de novo. *Trammell,* 246 S.W.3d at 820. When parties agree to arbitrate and the agreement encompasses the claims asserted, the trial court must compel arbitration and stay litigation pending arbitration. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.021(b); *Meyer v. WMCO–GP, LLC,* 211 S.W.3d 302, 305 (Tex.2006).

### ARBITRATION AGREEMENT

In their first and second issues, appellants argue that the trial court erred by

refusing to compel Dr. Jain and Dava Oncology to arbitrate their claims and by precluding appellants from arbitrating certain claims.

## A. Is there a valid arbitration agreement?

Appellants argue that Dr. Jain agreed to arbitrate all disputes arising out of their various agreements. In their motion to stay arbitration, Dr. Jain and Dava Oncology argued that the Consulting Agreement did not contain an arbitration agreement. The trial court apparently agreed with appellees and denied appellants' motion to compel arbitration, stating "the only document that I concluded that Dr. Jain had signed and agreed to the Arbitration Agreement was the Employment Agreement, as opposed to some of these acquisition and consulting."

■ The Consulting Agreement was executed by Medical Media Holdings, PER Group, and Dr. Jain. It states that the parties will "continue to be bound" by the arbitration provision found in section 15 of the Employment Agreement:

### CONSULTING & SEPARATION AGREEMENT

. . . .

1. *Termination of Employment Agreement.* The parties hereby agree that all of the Company's and Dr. Jain's respective obligations under the Employment Agreement shall terminate as of the Effective Date; provided, however, that the Company and Dr. Jain shall, as applicable, continue to be bound by Sections 11, 12, 13 and 15 of the Employment Agreement. . . .

. . . .

12. *Miscellaneous.*

. . . .

g. *Entire Agreement.* This Agreement, together with the LLC Agreement and Sections 11, 12, 13 and 15 of the Employment Agreement, set forth the entire understanding among the parties and supersede any prior agreements or understandings, express or implied, pertaining to the terms of Dr. Jain's employment and consulting relationships with the [PER Group] and the [PER Group] Affiliates and the termination thereof.

. . . .

Section 15 of the Employment Agreement states:

15. *Arbitration.* Any controversy, dispute or claim arising out of or in connection with or relating to this Agreement, or the breach, termination or validity hereof (any such controversy, dispute or claim being referred to as a *"Dispute"*) shall be finally settled by arbitration conducted expeditiously in accordance with the Commercial Arbitration rules then in force (the *"AAA Rules"*) of the American Arbitration Association (the *"AAA"*). . . .

■ When a contract incorporates by reference a provision from another document, that provision becomes a part of the contract into which it was incorporated. *See In re Bank One, N.A.,* 216 S.W.3d 825, 826 (Tex.2007) (orig. proceeding) (per curiam); *In re D. Wilson Constr. Co.,* 196 S.W.3d at 781; *Meridien Hotels, Inc. v. LHO Fin. P'ship I, L.P.,* 255 S.W.3d 807, 827 (Tex.App.-Dallas 2008, no pet.). In the Consulting Agreement, Dr. Jain agreed to "continue to be bound" by, and that "the entire agreement" included, the arbitration provision in the Employment Agreement.

Appellees argue on appeal that "PER Group and Dr. Jain **merely recalled a**

*separate* agreement to Section 15 of the *distinct* Employment Agreement. By this, they certainly did not 'incorporate' Section 15 into the Consulting Agreement, much less agree to the arbitrability of Consulting Agreement claims." They also argue that, even if the Consulting Agreement incorporated an arbitration provision, that provision applied only to disputes arising under the Employment Agreement, not "the *separate* Consulting Agreement." We cannot agree. By referring to the arbitration provision of a separate document and agreeing to "continue to be bound" by it in the new agreement, and including the arbitration provision in the "entire agreement" of the parties, the arbitration provision became a part of the Consulting Agreement. *See In re Bank One,* 216 S.W.3d at 826; *Meridien Hotels, Inc.,* 255 S.W.3d at 827.

We conclude that the trial court erred when it concluded that the Consulting Agreement did not contain an agreement to arbitrate.

**B. Scope of the arbitration agreement**

■ Having determined that the arbitration agreement is valid, we now consider whether that agreement encompasses the claims asserted below.

■ Appellants argue that the arbitration agreement requires that the scope of the agreement is to be determined by the arbitrator. They correctly note that the arbitration agreement states that arbitration will be conducted pursuant to the Commercial Arbitration Rules of the American Arbitration Association. They further argue that Rule R–7 of those rules states that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objection with respect to the existence, scope or validity of the arbitration agreement." Although the motion to compel refers to the AAA rules as an attached exhibit to the motion, the exhibit number does not contain those rules and there is nothing to indicate that the rules were offered into evidence below. As a result, we conclude that the trial court was required to determine the scope of the arbitration agreement. *See J.M. Davidson,* 128 S.W.3d at 227. We review de novo a trial court's determination of the scope of an arbitration agreement. *See Forest Oil Corp. v. McAllen,* 268 S.W.3d 51, 56 (Tex.2008).

**1. Appellees claims against appellants**

■ In determining the scope of the arbitration agreement, we focus on the petition's factual allegations rather than the legal causes of action asserted. *In re FirstMerit Bank, N.A.,* 52 S.W.3d at 754 (decided under Federal Act).

The Consulting Agreement requires arbitration of "[a]ny controversy, dispute or claim arising out of or in connection with or relating to this Agreement, or the breach, termination or validity hereof...." Citing the noncompete provision of the Consulting Agreement, Dr. Jain and Dava Oncology's first amended petition asserts

[Appellants] expressly and affirmatively agreed that Dr. Jain could start, own, and operate *any* business involved in the research, development, investigation, treatment, marketing or sale of pharmaceutical drugs—including, specifically, cancer drugs.... *After* the Consulting Agreement was executed, Dr. Jain became involved with Dava Oncology, L.P., a clinical research organization ... dedicated to helping pharmaceutical companies with vital research and development of cancer-fighting drugs.

[Appellants] have launched and continued strategic hostile attacks, frivolously and illogically claiming that, notwithstanding the plain terms of the Consult-

ing Agreement that expressly allow him to participate in the research, development, and/or marketing of cancer drugs and to otherwise work with pharmaceutical companies—he is somehow not allowed to participate in the research, development, and/or marketing of cancer drugs or to otherwise work with pharmaceutical companies.

[Appellants] had *actual* knowledge of Dr. Jain's actions and Dava's business for *many months* prior to making any complaint.... Defendants' actions in violation of the Consulting Agreement are unfortunately delaying Dava's ability to assist pharmaceutical companies in the development of cancer drugs ... [Appellants] must be stopped so that Dava can continue in its vital and noble mission—unburdened by [Appellants]' anticompetitive breaches and activity.

Dr. Jain does not dispute and, in fact, agrees that these allegations arise out of or relate to the Consulting Agreement. Consequently, we conclude that Dr. Jain, as a signatory to the Consulting Agreement containing the arbitration clause, may be compelled to arbitrate his claims against appellants.

■ We further conclude that appellants may compel Dava Oncology to arbitrate its claims against them. The Texas Supreme Court has held that a nonsignatory that sues based on a contract subjects itself to the contract's terms, including an agreement to arbitrate. *In re Labatt Food Serv., L.P.,* 279 S.W.3d 640, 643–44 (Tex.2009) (orig. proceeding) (applying state procedural and substantive law to arbitration agreement under Federal Act). When a nonsignatory seeks to derive a direct benefit from a contract containing an arbitration clause, the nonsignatory is bound by the arbitration provision. *See id.* (citations omitted); *In re Vesta Ins. Group, Inc.,* 192 S.W.3d 759, 761–62 (Tex.

2006) (orig. proceeding) (per curiam). The Texas Supreme Court has also said that tortious interference claims between a signatory to an arbitration agreement and agents or affiliates of a signatory arise more out of the contract than general law. *In re Vesta Ins. Group, Inc.,* 192 S.W.3d at 762.

Dava Oncology, a nonsignatory to the Consulting Agreement, alleges that appellants' "actions in violation of the Consulting Agreement are unfortunately delaying Dava's ability to assist pharmaceutical companies in the development of cancer drugs." It alleged that appellants' violation of the Consulting Agreement has prevented it from pursuing its business endeavors, and it contends that appellants have misinterpreted the carve-out of the noncompete clause in the Consulting Agreement resulting in a delay in its ability to assist pharmaceutical companies in the development of cancer drugs. Although Dava Oncology's claim is asserted as one for tortious interference, we conclude that Dava Oncology is bound to the arbitration agreement because it seeks to derive a direct benefit from its interpretation of the noncompete restrictive covenant in the Consulting Agreement. *In re Labatt Food Serv., L.P.,* 279 S.W.3d at 643–44; *In re Vesta Ins. Group, Inc.,* 192 S.W.3d at 761–62. As a result, we further conclude that appellants may compel Dava Oncology to arbitrate its claims against them. *See In re Labatt Food Serv., L.P.,* 279 S.W.3d at 643–44; *In re Kellogg Brown & Root,* 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding).

Next, Dr. Jain contends that his and Dava Oncology's claims against Tiba Oncology are not subject to arbitration because Tiba Oncology is not a signatory to the Consulting Agreement. However, when a signatory's claims against a nonsignatory make reference to or rely on the

terms of a written agreement, the signatory's claims arise out of or relate directly to the written agreement and arbitration is appropriate. *See Meyer,* 211 S.W.3d at 305. The Texas Supreme Court has stated

the claimant cannot "have it both ways": it cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.

*Id.* at 306 (quoting *Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524, 527 (5th Cir.), *cert. denied,* 531 U.S. 1013, 121 S.Ct. 570, 148 L.Ed.2d 488 (2000)). The court noted that *Grigson* is "a substantially correct statement of Texas law." *Id.*

In this case, Dr. Jain, a signatory, sought to hold Tiba Oncology, a nonsignatory, bound by his interpretation of the noncompete restrictive covenant in the Consulting Agreement. We conclude, therefore, that Dr. Jain and Dava Oncology cannot "have it both ways" and that Tiba Oncology may compel Dr. Jain and Dava Oncology to arbitrate their claims against it arising out of the Consulting Agreement.

### 2. Medical Media Holdings' and PER Group's claims against appellees

Appellants filed demands for arbitration in conjunction with their motions to compel arbitration. After the trial court enjoined Medical Media Holdings from arbitrating any disputes against Dr. Jain arising out of any agreement with him, Medical Media Holdings filed a revised demand for arbitration in which it reserved its right to compel arbitration of claims against Dr. Jain. In the second amended demand for arbitration, Medical Media Holdings and PER Group sought to arbitrate claims arising out of the Consulting Agreement, Employment Agreement, and other agreements relating to the acquisition of Dr. Jain's businesses and the noncompete restrictive covenants. These claims sought to determine the same issues raised in appellees' lawsuit: whether the noncompete restrictive covenants have been violated. For the reasons stated above, we conclude that the trial court erred by precluding Medical Media Holdings and PER Group from arbitrating these claims.

We sustain appellants' first and second issues.

### 3. Temporary injunction prohibiting arbitration

In their third issue, appellants argue that the trial court erred by enjoining Medical Media Holdings from asserting any claims against Dr. Jain in arbitration. Based on our disposition of issues one and two, we agree that the trial court erred.

We sustain appellants' third issue.

### C. Did appellants waive their right to arbitration?

Appellees contend that appellants waived their right to compel arbitration by substantially invoking the judicial process and by requesting a stay of litigation pending arbitration of PER Group's claims against Dr. Jain. We disagree.

### 1. Substantial invocation of judicial process

Whether a party has waived its right to arbitrate is a question of law that we review de novo based on the "totality of the circumstances." *Perry Homes v. Cull,* 258 S.W.3d 580, 591 (Tex. 2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 952, 173 L.Ed.2d 116 (2009); *Trammell,* 246 S.W.3d at 820. Public policy favors arbitration and there is a strong presumption against finding that a party has waived its right to arbitration. *Perry Homes,* 258 S.W.3d at 589–90. As a re-

sult, the burden to prove waiver is a heavy one. *Id.; EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 89 (Tex.1996) (per curiam). Any doubts regarding waiver are resolved in favor of arbitration. *In re Bruce Terminix Co.,* 988 S.W.2d 702, 705 (Tex.1998) (orig. proceeding) (per curiam).

 Factors we consider under the totality-of-the-circumstances test include whether the movant was the plaintiff or the defendant, how long the movant waited before seeking arbitration, how much pretrial activity related to the merits rather than arbitrability or jurisdiction, how much time and expense has been incurred in litigation, whether the movant sought or opposed arbitration earlier in the case, whether the movant filed affirmative claims or dispositive motions, whether discovery would be useful in arbitration, and whether the movant sought judgment on the merits. *Perry Homes,* 258 S.W.3d at 591–92; *In re Vesta Ins. Group, Inc.,* 192 S.W.3d at 763.

Appellants/movants are the defendants below. They filed a demand for arbitration four days after appellees filed their lawsuit. And they filed a motion to compel arbitration and stay proceedings pending arbitration before their answer was due. When they filed their answer, they filed a plea in abatement and conditional answer subject to their motion to compel arbitration. And they did not assert affirmative defenses or counterclaims, but, instead, reserved their right to do so. The hearings in the trial court related to the arbitrability of the claims, not the claims' merits. And the record does not contain any indication that the parties engaged in pretrial discovery, other than a single reference to a motion to quash a deposition filed by movants.

Based on the totality of the circumstances, we conclude that appellants did not substantially invoke the trial process and, therefore, did not waive their right to arbitrate appellees' claims.

**2. Request for stay of litigation**

Appellees further contend that appellants waived their right to compel arbitration by requesting, and receiving, a stay of litigation pending arbitration of PER Group's claims against Dr. Jain. We disagree.

Appellants reserved their rights to arbitrate all claims arising out of all agreements in their motions to compel arbitration and demand for arbitration. As a result, we conclude that appellants did not waive their right to compel arbitration of their claims against appellees by seeking and obtaining a stay of litigation pending arbitration of PER Group's claims against Dr. Jain arising solely out of the Employment Agreement. To the extent PER Group's claims against Dr. Jain arising out of the Employment Agreement are subject to a pending arbitration proceeding, we conclude that the trial court did not err by refusing to compel arbitration of those claims. *See Zuffa, LLC v. HDNet MMA 2008 LLC,* 262 S.W.3d 446, 451 (Tex.App.-Dallas 2008, orig. proceeding).

CONCLUSION

We sustain appellants' issues. We reverse the trial court's order denying appellants' motion to compel arbitration, vacate the trial court's order enjoining appellants from arbitrating appellees' claims, and remand to the trial court for further proceedings. We dismiss the petition for writ of mandamus.