

# COURT OF APPEALS
# THIRTEENTH DISTRICT OF TEXAS
# CORPUS CHRISTI - EDINBURG

## No. 13-10-00125-CV

**DANIEL CABALLERO, FOX TREE & LANDSCAPE
NURSERY, INC., MONIKA PAGE, BIZMATCH, INC.,
BIZMATCH BUSINESS SOLUTIONS, INC., AND
BIZMATCH COMMERCIAL BROKERAGE, LLC,**                   Appellants,

**v.**

**DONNIE B. CONTRERAS AND PICLIDIX, INC.,**                   Appellees.

On appeal from the County Court at Law No. 4
of Nueces County, Texas.

## No. 13-10-00150-CV

**IN RE DAN CABALLERO, FOX TREE & LANDSCAPE NURSERY, INC.,
MONIKA PAGE, BIZMATCH, INC., BIZMATCH BUSINESS SOLUTIONS,
INC., AND BIZMATCH COMMERCIAL BROKERAGE, LLC**

On Petition for Writ of Mandamus.

## MEMORANDUM OPINION

**Before Justices Yañez, Rodriguez, and Garza**
**Memorandum Opinion by Justice Rodriguez**

By this combined appeal and original proceeding, Daniel Caballero, Fox Tree & Landscape Nursery, Inc., Monika Page, Bizmatch, Inc., Bizmatch Business Solutions, Inc., and Bizmatch Commercial Brokerage, LLC (collectively "appellants"), seek to vacate an order denying their motion to compel arbitration in a commercial dispute over the sale of a business. We deny the petition for writ of mandamus, reverse the trial court's order, and remand the case for further proceedings consistent with this opinion.

## I. BACKGROUND

Fox Tree & Landscape Nursery ("Fox"), owned by Daniel Caballero, owns and operates nurseries at several different locations in Corpus Christi, Texas. Caballero decided to sell the land and business at one of these locations, 14209 Northwest Boulevard, so he retained the services of Bizmatch, Inc. ("Bizmatch"), a business broker, to locate prospective purchasers for the land and business at that location. Donnie B. Contreras, the principal and owner of Piclidix, Inc. ("Piclidix") was working with Bizmatch to find a suitable investment. Piclidix ultimately purchased the land and business at 14209 Northwest Boulevard from Fox.

Piclidix made a cash down payment of $125,000. The remainder of the purchase price for the land and business was seller-financed with a wraparound real estate lien note for $825,000. The transaction included both security and guaranty agreements. As part of the sale, the parties executed an "Arbitration Agreement" which provides, in part:

> TRANSACTION: Sale of land and business located at 14209 Northwest Blvd., Corpus Christi, Texas

LEGAL DOCUMENTS:        Wraparound Real Estate Lien Note, Wraparound Deed of Trust, Wraparound Warranty Deed with Vendor's Lien, Security Agreement, Guaranty Agreement, Non-Competition Agreement, Bill of Sale, UCC-1, Agreement Concerning Legal Documents and Transaction, Attorney Disclosure, and Arbitration Agreement.

Seller, Buyer, and Individuals agree that any controversy or claim arising out of or relating to the Transaction, the Legal Documents, or the breach thereof shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Any controversy or claim subject to this arbitration provision shall be decided by one arbitrator, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Any arbitration proceeding shall be conducted in the city and state where the real property that is the subject of this Agreement is located.

Caballero signed the agreement individually and as president of Fox, and Contreras signed the agreement individually and as president of Piclidix.

After closing, Piclidix occupied the land and ran the business. Alleging that Piclidix breached its agreements, specifically with regard to its requirement to maintain adequate inventory on site to secure the purchase, Fox repossessed the property and business. Piclidix disputed Fox's allegations and contended that Fox wrongfully seized the property. The factual circumstances surrounding the alleged breach and repossession are hotly disputed by the parties.

Contreras and Piclidix brought suit against appellants in County Court Number Four of Nueces County, Texas for, inter alia, wrongful repossession and theft. Fox subsequently filed a demand for arbitration with the American Arbitration Association. In county court, Contreras and Piclidix filed a motion to stay arbitration, and appellants, in turn, filed a motion to compel arbitration. Following several rounds of amended pleadings, the trial court held a truncated hearing on the motion to stay and motion to compel. At the hearing,

3

the parties presented argument on the merits of their positions, then began discussing the actual scope of the arbitration hearing itself; that is, whether it was to be a summary proceeding or a full evidentiary hearing. Following this discussion, the trial court stated: "Let's set me up to read these things, to make a ruling . . . . I need to read them and understand them to make the right decision, all right, then we'll have a hearing if I overrule your motions and we'll go to the evidentiary step."

At the conclusion of the hearing, the witnesses who had been subpoenaed to appear and give testimony were released with the understanding that the hearing was "continuing."

On March 5, 2010, the trial court issued an order which: (1) denied appellants' motion to stay or abate court proceeding and compel arbitration; (2) granted appellees' motion to stay arbitration; and (3) overruled all objections presented by appellants or appellees to evidence offered by the parties in support of the motions. This appeal and original proceeding ensued.

Fox and Caballero raise twelve issues. Page and Bizmatch raise those same twelve issues and one additional issue pertaining to their right to compel arbitration under the agreement. We have reorganized some of these issues for the purpose of analysis.

## II. FEDERAL ARBITRATION ACT OR TEXAS ARBITRATION ACT

The trial court's order did not specify whether the arbitration agreement in this case was governed by the Federal Arbitration Act ("FAA") or the Texas Arbitration Act ("TAA"). *See* 9 U.S.C. §§ 1-16 (2009) (FAA); TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001-.098 (Vernon Supp. 2009) (TAA). Therefore, appellants seek review of the order denying arbitration both by mandamus and interlocutory appeal. *See Jack B. Anglin Co., Inc. v.*

4

*Tipps*, 842 S.W.2d 266, 272 (Tex. 1992) (providing that litigants alleging entitlement to arbitration under the FAA and TAA must pursue parallel proceedings).[1]  Appellants' first and second issues are stated as follows:

> As a threshold matter to jurisdiction and proper relief, does the Federal Arbitration Act  (FAA) . . . 9 U.S.C. § 1 *et seq.*, or the Texas General Arbitration Act (TGAA), Tex. Civ. Prac. & Rem. Code § 171.001 *et seq.*, or both the FAA and TGAA apply as the substantive law in this case regarding enforcement of the parties' written arbitration agreement in this case?
>
> If the FAA and TGAA both apply, is there a conflict between the FAA and the TGAA warranting FAA preemption of the TGAA?

The FAA applies to transactions that involve interstate commerce.  *See* 9 U.S.C. § 2 (2009). "Commerce" has been broadly defined and encompasses contracts relating to interstate commerce.  *See In re Gardner Zemke Co.*, 978 S.W.2d 624, 626 (Tex. App.–El Paso 1998, orig. proceeding).  As defined by the FAA, "interstate commerce" is not limited to the interstate shipment of goods, but includes all contracts "relating to" interstate commerce. *In re FirstMerit Bank*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding); *Lost Creek Mun. Util. Dist. v. Travis Indus. Painters, Inc.*, 827 S.W.2d 103, 105 (Tex. App.–Austin 1992, writ denied).  Interstate commerce is evidenced by, inter alia, the location of a party's headquarters in another state, the manufacture of component parts in a different state, the transportation of goods across state lines, and billings prepared in another state.  *TMI, Inc. v. Brooks*, 225 S.W.3d 783, 791 (Tex. App.–Houston [14th Dist.]

---

[1] Texas Civil Practice & Remedies Code section 51.016, enacted in 2009, provides for an interlocutory appeal in a matter subject to the FAA "under the same circumstances that an appeal from a federal district court's order or decision would be permitted by" the FAA.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (Vernon Supp. 2009).  Section 51.016 does not apply to this case because this case arose prior to its effective date.  *See* Act of May 27, 2009, 81st Leg., R.S., ch. 820, § 1, 2009 TEX. GEN. LAWS 2061, 2061 (codified at TEX. CIV. PRAC. & REM. CODE ANN. § 51.016).

2007, pet. denied); *Stewart Title Guar. Co. v. Mack*, 945 S.W.2d 330, 333 (Tex. App.–Houston [1st Dist.] 1997, writ dism'd w.o.j.).  Further, the word "involving" in the FAA is construed broadly and is the functional equivalent of "affecting," signaling Congress's intent to exercise its Commerce Clause power to the fullest extent.  *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272-74, 276-78 (1995); *Wee Tots Pediatrics, P.A. v. Morohunfola*, 268 S.W.3d 784, 789-790 (Tex. App.–Fort Worth 2008, no pet.).  The FAA does not require a substantial effect on interstate commerce; rather, it merely requires commerce to be involved or affected.  *See L & L Kempwood Assocs., L.P. v. Omega Builders, Inc. (In re L & L Kempwood Assocs., L.P.),* 9 S.W.3d 125, 127 (Tex. 1999) (combined appeal & orig. proceeding) (noting that the FAA "extends to any contract affecting commerce, as far as the Commerce Clause of the United States Constitution will reach").

When, as here, an agreement is silent as to whether the FAA applies, the question of whether the transaction affects interstate commerce, and thus whether the FAA governs, is one of fact.  *TMI, Inc.*, 225 S.W.3d at 791; *In re Educ. Mgmt. Corp.*, 14 S.W.3d 418, 422 (Tex. App.–Houston [14th Dist.] 2000, orig. proceeding).  Appellants contend that "[b]ecause of the nature of the transaction in this case, the transaction appears to involve interstate commerce in a sufficient degree to invoke the FAA."  Appellants concede, however, that the evidence is not "well-developed" in this area because of the trial court's "refusal to allow for an evidentiary hearing."

"Whether the parties contemplated that their transaction would substantially affect interstate commerce is irrelevant; if the transaction affects interstate commerce 'in fact,'

6

the arbitration provision is governed by the FAA." *In re Educ. Mgmt. Corp.*, 14 S.W.3d at 423 (quoting *Palm Harbor Homes, Inc. v. McCoy*, 944 S.W.2d 716, 719 (Tex. App.–Fort Worth 1997, orig. proceeding) (citing *Allied-Bruce*, 513 U.S. at 281)). In the instant case, a review of the pleadings indicates that all parties involved in the suit are Texas residents, the contract was signed in Texas, and the contract was to be performed in Texas. *See, e.g., TMI, Inc.*, 225 S.W.3d at 791 ("Here, it is undisputed Trendmaker is a Texas corporation selling real property located within Texas via purchase agreements executed solely in Texas. "). There is no evidence in the record indicating that the parties' transaction in fact affects interstate commerce. *See In re Educ. Mgmt. Corp.*, 14 S.W.3d at 423. Accordingly, we conclude that the FAA does not apply to this transaction. Because this dispute is governed by the TAA, we need not address appellants' issue regarding preemption. We deny appellants' petition for writ of mandamus filed pursuant to the FAA and proceed to address the merits of the interlocutory appeal.

## III. VALIDITY AND SCOPE

In their third issue, appellants contend that the trial court abused its discretion in "failing to enforce summarily the written arbitration agreement . . . because Fox Tree conclusively established the existence of a valid arbitration agreement, that the claims in the lawsuit were within its scope, and that Piclidix was refusing to arbitrate." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.021 (Vernon 2005).

When reviewing by interlocutory appeal an order denying arbitration under the TAA, we apply a de novo standard to legal determinations and a "no evidence" standard to factual determinations. *PER Group, L.P. v. Dava Oncology, L.P.*, 294 S.W.3d 378, 384

7

(Tex. App.–Dallas 2009, no pet.); *Trammell v. Galaxy Ranch Sch., L.P. (In re Trammell)*, 246 S.W.3d 815, 820 (Tex. App.–Dallas 2008, no pet.); *TMI, Inc.*, 225 S.W.3d at 791. In reviewing the trial court's factual determinations, we must credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *PER Group, L.P.*, 294 S.W.3d at 384; *Trammell*, 246 S.W.3d at 820 (citing *Kroger Tex. Ltd. v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005)); *TMI, Inc.*, 225 S.W.3d at 791. However, when the facts relevant to the arbitration issue are not disputed, we are presented only with issues of law and we review the trial court's order de novo. *PER Group, L.P.*, 294 S.W.3d at 384; *Trammell*, 246 S.W.3d at 820.

A party attempting to compel arbitration must first establish that the dispute in question falls within the scope of a valid arbitration agreement. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *TMI, Inc.*, 225 S.W.3d at 791; *Cappadonna Elec. Mgmt. v. Cameron County*, 180 S.W.3d 364, 370 (Tex. App.–Corpus Christi 2005, orig. proceeding). A court may not order arbitration in the absence of such an agreement. *Cappadonna*, 180 S.W.3d at 370 (citing *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994)). The parties' agreement to arbitrate must be clear. *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 835 (Tex. App.–Houston [1st Dist.] 2002, no pet.) (combined appeal & orig. proceeding). If the party opposing arbitration denies the existence of an agreement to arbitrate, that issue is determined "summarily" by the court as a matter of law. TEX. CIV. PRAC. & REM. CODE ANN. § 171.021(b); *J.M. Davidson, Inc.*, 128 S.W.3d at 227. If the movant establishes that an arbitration agreement governs the dispute, the burden then

shifts to the party opposing arbitration to establish a defense to the arbitration agreement. *McReynolds v. Elston*, 222 S.W.3d 731, 739 (Tex. App.–Houston [14th Dist.] 2007, no pet.).

Courts may not order parties to arbitrate unless they have agreed to do so. *See Freis*, 877 S.W.2d at 284 ("While courts may enforce agreements to arbitrate disputes, arbitration cannot be ordered in the absence of such an agreement."); *Belmont Constructors, Inc. v. Lyondell Petrochemical Co.*, 896 S.W.2d 352, 356-57 (Tex. App.–Houston [1st Dist.] 1995, no writ) (combined appeal & orig. proceeding). Therefore, despite strong presumptions that favor arbitration, a valid agreement to arbitrate remains a settled, threshold requirement to obtaining relief, whether under the TAA or the FAA. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737-38 (Tex. 2005) (orig. proceeding) (analyzing the FAA); *J.M. Davidson, Inc.*, 128 S.W.3d at 227 (analyzing the TAA).

Ordinary contract principles are applied to the determination of whether there is a valid agreement to arbitrate. *J.M. Davidson, Inc.*, 128 S.W.3d at 227; *see In re Bunzl U.S.A., Inc.*, 155 S.W.3d 202, 209 (Tex. App.–El Paso 2004, orig. proceeding). In determining the scope of the arbitration agreement, we focus on the petition's factual allegations rather than the legal causes of action asserted. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d at 754 (decided under FAA); *PER Group, L.P.*, 294 S.W.3d at 386 (decided under TAA). Courts resolve any doubts about an arbitration agreement's scope in favor of arbitration. *TMI, Inc.*, 225 S.W.3d at 791 (applying TAA). When parties agree to arbitrate and the agreement encompasses the claims asserted, the trial court must compel

arbitration and stay litigation pending arbitration. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.021(b); *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006); *PER Group, L.P.*, 294 S.W.3d at 384.

In reviewing the text of the arbitration agreement and considering that the parties signed it and the accompanying documents, we conclude that appellants have established a valid agreement to arbitrate. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737; *Bates v. MTH Homes-Tex., L.P.*, 177 S.W.3d 419, 422 (Tex. App.–Houston [1st Dist.] 2005, no pet.). The agreement requires arbitration between the two companies and their principals and applies to "any controversy or claim arising out of or relating to the Transaction, the Legal Documents, or the breach thereof." We further conclude that the claims at issue in this lawsuit fall within the scope of the agreement. *See In re First Tex. Homes, Inc.*, 120 S.W.3d 868, 870 (Tex. 2003) (orig. proceeding) (per curiam) (examining the scope of an arbitration agreement that applied to "all disputes between [them] . . . arising out of this Agreement or other action performed . . . by [First Texas]"); *see also Emerald Tex. Inc. v. Peel*, 920 S.W.2d 398, 403 (Tex. App.–Houston [1st Dist.] 1996, no writ) ("If . . . the [arbitration] clause is broad, arbitration should not be denied unless it can be said with positive assurance that the particular dispute is not covered.").

Although we have concluded that the arbitration agreement was valid and the claims at issue were within the scope of the arbitration agreement, we may not sustain appellants' third issue in its entirety because we have not yet considered appellees' defenses to the arbitration agreement. *See J.M. Davidson, Inc.*, 128 S.W.3d at 227 (stating that if the trial court finds a valid agreement, the burden shifts to the party opposing arbitration to raise

10

an affirmative defense to enforcing arbitration); *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 367 (Tex. App.–Houston [14th Dist.] 2000, orig. proceeding); *City of Alamo v. Garcia*, 878 S.W.2d 664, 665 (Tex. App.–Corpus Christi 1994, no writ).

## IV. EVIDENTIARY HEARING

In their eleventh issue, appellants contend that the trial court abused its discretion in refusing to provide for an evidentiary hearing when:

> Piclidix had not established its entitlement to relief conclusively under any of [its] defenses, and it had promised an evidentiary hearing to Fox Tree if it overruled its objections to Piclidix's summary evidence in opposition to Fox Tree's motion to compel arbitration and in support of Piclidix's motion to stay arbitration.

Texas Civil Practice and Remedies Code section 171.021 allows trial courts to "summarily determine" the issue of whether to compel a party to arbitrate its claims. TEX. CIV. PRAC. & REM. CODE ANN. § 171.021 (Vernon 2005); *Jack B. Anglin Co., Inc.*, 842 S.W.2d at 269; *see also Petroleum Analyzer Co. LP v. Olstowski*, No. 01-09-00076-CV, 2010 Tex. App. LEXIS 5581, at *23-*24 (Tex. App.–Houston [1st Dist.] July 15, 2010, no pet.) (mem. op. on reh'g). In *Anglin*, the supreme court defined the proper circumstances under which a trial court should hold a full evidentiary hearing on a motion to compel arbitration:

> Because the main benefits of arbitration lie in expedited and less expensive disposition of a dispute, and the legislature has mandated that a motion to compel arbitration be decided summarily, we think it unlikely that the legislature intended the issue to be resolved following a full evidentiary hearing in all cases. We also envision that the hearing at which a motion to compel arbitration is decided would ordinarily involve application of the terms of the arbitration agreement to undisputed facts, amenable to proof by affidavit. With these considerations in mind, we hold that the trial court may summarily decide whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations. However, if the material facts

11

> necessary to determine the issue are controverted, by an opposing affidavit or otherwise admissible evidence, the trial court must conduct an evidentiary hearing to determine the disputed material facts.

*Jack B. Anglin Co., Inc.*, 842 S.W.2d at 269. The supreme court reaffirmed and reapplied these principles in 2008. *See In re Poly-America, L.P.*, 262 S.W.3d 337, 354 (Tex. 2008) ("Because the only facts Luna presented on the motion to compel were uncontroverted under this standard—Luna's affidavits accompanying his original petition were neither contradicted nor challenged in Poly-America's response—we believe the court of appeals acted properly in crediting those facts on appeal.").

One of our sister courts has explained that a motion to compel arbitration should be treated as "essentially a motion for summary judgment, subject to the same evidentiary standards." *In re Jebbia*, 26 S.W.3d 753, 756-57 (Tex. App.–Houston [14th Dist.] 2000, orig. proceeding); *see also In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 896-97 (Tex. App.–Houston [14th Dist.] 2006, orig. proceeding). The party alleging an arbitration agreement must present "complete summary proof of his 'case-in-chief'" that an agreement to arbitrate requires arbitration of the dispute. *In re Jebbia*, 26 S.W.3d at 756-57. Once this is accomplished, the party resisting arbitration may raise an issue of material fact about his opponent's proof or present some evidence supporting every element of a defensive claim that there is no enforceable agreement to arbitrate. *See id.* Only if a material issue of fact is raised is an evidentiary hearing necessary. *Id.*; *see Jack B. Anglin Co., Inc.*, 842 S.W.2d at 269. It is an abuse of discretion to grant or deny arbitration without holding an evidentiary hearing if there are disputed issues of material fact. *See, e.g., In re Wash. Mut. Fin., L.P.*, 173 S.W.3d 189 (Tex. App.–Corpus Christi 2005, orig. proceeding) ( holding that

12

the trial court abused its discretion by sustaining a defense to arbitration without holding an evidentiary hearing to determine disputed issues of material fact); *Rogers v. Maida*, 126 S.W.3d 643, 646 (Tex. App.–Beaumont 2004, orig. proceeding) (holding that the trial court erred in not conducting an evidentiary hearing on arbitrability of dispute).

Accordingly, in order to determine whether the trial court was required to hold an evidentiary hearing on the motion to compel arbitration, we examine the pleadings and the evidence to determine if appellees have raised any material issues of fact regarding their defensive issues to arbitration. In this regard, in their fifth issue, appellants argue that the trial court abused its discretion in "summarily granting Piclidix relief . . . when Piclidix did not establish conclusively any valid affirmative defense to enforcement of the valid arbitration agreement between Piclidix and Fox Tree." Under Texas law, as with any other contract, agreements to arbitrate are valid unless grounds exist at law or in equity for revocation of the agreement. *In re Poly-America, L.P.*, 262 S.W.3d at 348. The burden of proving such a ground—such as fraud, unconscionability or voidness under public policy—falls on the party opposing the contract. *See id.*; *In re FirstMerit Bank*, 52 S.W.3d at 756.

In their sixth, seventh, eighth, ninth, and tenth issues, appellants address specific defenses to the arbitration agreement, respectively, unconscionability, fraud, waiver or estoppel, and "self-help" waiver. We address these alleged defenses in turn. In their sixth issue, appellants contend there is no evidence of unconscionability, procedural or substantive, relating to the arbitration agreement at the time that the arbitration agreement was made so as to warrant a denial of summary enforcement of the arbitration agreement.

Arbitration agreements are not inherently unconscionable. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 678 (Tex. 2006) (orig. proceeding). "Unconscionable contracts, however—whether relating to arbitration or not—are unenforceable under Texas law." *In re Poly-America, L.P.*, 262 S.W.3d at 348-49. The Texas Arbitration Act specifically acknowledges this defense and provides that a court may not enforce an arbitration agreement "if the court finds the agreement was unconscionable at the time the agreement was made." TEX. CIV. PRAC. & REM. CODE ANN. § 171.022 (Vernon 2005); *see In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 677; *In re Weeks Marine, Inc.*, 242 S.W.3d 849, 860-61 (Tex. App.–Houston [14th Dist.] 2007, orig. proceeding).

According to the Texas Supreme Court, "[u]nconscionability is to be determined in light of a variety of factors, which aim to prevent oppression and unfair surprise; in general, a contract will be found unconscionable if it is grossly one-sided." *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 677 (*citing* DAN B. DOBBS, 2 LAW OF REMEDIES 703, 706 (2d ed. 1993), RESTATEMENT (SECOND) OF CONTRACTS § 208, cmt. a (1979) ("The determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose, and effect. Relevant factors include weaknesses in the contracting process like those involved in more specific rules as to contractual capacity, fraud, and other invalidating causes; the policy also overlaps with rules which render particular bargains or terms unenforceable on grounds of public policy.")). In considering an arbitration clause, allegations of unconscionability "must specifically relate to the [arbitration clause] itself, not the contract as a whole, if [unconscionability is] to defeat arbitration." *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 756.

14

Unconscionability may be either procedural or substantive in nature. *See id.* Generally speaking, procedural unconscionability refers to the circumstances surrounding the adoption of the arbitration provision, and substantive unconscionability concerns the fairness of the arbitration provision itself. *Id.*; *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002) (orig. proceeding). More specifically, procedural unconscionability relates to the making or inducement of the contract, focusing on the facts surrounding the bargaining process. *TMI, Inc.*, 225 S.W.3d at 792; see *Abdel Hakim Labidi v. Sydow*, 287 S.W.3d 922, 927 (Tex. App.–Houston [14th Dist.] 2009, no pet.) (stating that the success or failure of an argument regarding procedural unconscionability is dependent upon the existence of facts which allegedly illustrate unconscionability). The test for substantive unconscionability is whether, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank*, 52 S.W.3d at 757; *see In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 678.

The party asserting unconscionability bears the burden of proof. *In re Turner Bros. Trucking Co.*, 8 S.W.3d 370, 376-77 (Tex. App.–Texarkana 1999, orig. proceeding). Whether a contract is contrary to public policy or unconscionable at the time it is formed is a question of law. *In re Poly-America, L.P.*, 262 S.W.3d at 348-49; *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 562 (Tex. 2006). Because a trial court has no discretion to determine what the law is or apply the law incorrectly, its clear failure to properly analyze or apply the law of unconscionability constitutes an abuse of discretion. *In re Poly-*

15

*America, L.P.*, 262 S.W.3d at 349; *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *In re Green Tree Servicing LLC*, 275 S.W.3d 592, 602-603 (Tex. App.–Texarkana 2008, orig. proceeding).

Appellees raise numerous grounds which they assert render the arbitration agreement unconscionable. Appellees contend that the arbitration agreement was unconscionable because Caballero personally and physically repossessed the property when Contreras was one day late on a monthly payment, when the note allowed for a five-day "grace" period, instead of instituting arbitration because of the alleged breach; however, appellees are instead allegedly limited in their remedies to arbitration. *Cf. In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 677 (stating that an arbitration agreement may be illusory if a party can unilaterally avoid the agreement to arbitrate). Appellees contend that the arbitration agreement was unconscionable given the disparity in sophistication between the parties, the rushed nature of the closing, the timing of the disclosure of relevant documents to Contreras, and Bizmatch's alleged representations to Contreras that it would "take care of him." *See id.* (explaining that the test for substantive unconscionability encompasses the parties' general commercial background and the commercial needs of the particular case to determine if the arbitration agreement is so one-sided that it is unconscionable). Appellees further contend the arbitration agreement was unconscionable because Caballero entered the agreement under a false name. They point to news articles indicating that Caballero was an assumed name utilized by an individual named David Anthony Boen, who had been arrested for tampering with governmental records and had a criminal history including possession and sale of marijuana and possession of stolen property. Appellees contend that they would not have

16

entered the arbitration agreement had they known of Caballero's true identity. Further, inter alia, appellees contend that the arbitration agreement is unconscionable because of excessive costs. By affidavit, Contreras testified regarding his ability to pay the costs of arbitration:

> I invested my savings and my initial retirement funds into this new business venture. From these funds, I invested the initial down payment of $125,000.00, plus closing expenses, and the initial capital required to open and operate the business for the first nine to twelve month period, including the period from closing to June 19th, 2009. This investment in and capitalization of the Nursery required my using a substantial portion of my savings and available personal funds. I had anticipated that the operating business would generate additional sufficient income and funds, with my initial investments, to adequately capitalize the business during its initial period of operation. On June 19th, 2009, Dan Caballero and his agents wrongfully took possession of my business premises, personal property and inventory, including specifically the real property. . . . The actions by Dan Caballero and his agents has resulted in destroying my business and its generation of income. This has resulted in my no-longer being able to financially defend myself or prosecute Dan Caballero without representation by my attorneys. I believe that this [adverse] result of Caballero's actions was anticipated by Caballero et al[.] and the blatant manner of his taking over my business and property was done in anticipation of further dissipating my fragile financial condition.

> . . . .

> I understand that if I was forced to arbitrate my claim with the American Arbitration [Association], and my claim against Fox and Caballero was $1,000,000 to $5,000,000, I would have to pay a filing free of $1,000, $7,800 proceed fee[,] and $3,250 final fee. I also understand I would have to pay for one-half of the arbitration fee, which would be $3,000 to $5,000 dollars. I cannot pay this. Fox took my $125,000 payment for the nursery as well as the nursery and I cannot afford the payment for the arbitration.

Further, according to an affidavit dated February 5, Contreras further testified that:

> Attached hereto as Exhibit "1" is an invoice from the American Arbitration Association for $5,000.00. It is my understanding that this is the "initial" fee to cover initial matters. The Arbitration is scheduled for September 7, 2010. I have no funds to pay this invoice, or additional arbitrator fees. I am currently unemployed. I am currently receiving nominal

17

> unemployment benefits but such benefits will be terminated in the near future. Therefore, I am not able to pay the arbitration fees if I am forced to arbitration in this matter.

Contreras's counsel, Kevin W. Grillo, also testified by affidavit, attaching and incorporating by reference a page of the AAA Commercial Arbitration Rules explaining the applicable arbitration fees:

> To the extent Donnie Contreras' claim . . . was made as a claim in [an] AAA proceeding, the claim of $1,000,000 to $5,000,000 would require Donnie Contreras to pay an initial filing fee of $1,000, a proceed fee of $7,800 and a final fee of $3,250. In addition, the AAA selected arbitrator charges $1,750.00 per day. According to AAA rules, Contreras would have to pay ½ of the arbitration fees, which for 3-5 . . . days would be $2,625.00 to $4,375.00.

Both the United States and Texas Supreme Court have recognized that the existence of large arbitration costs could preclude litigants from effectively vindicating their rights in an arbitral forum. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000); *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 756. While neither court specified how detailed the showing of prohibitive expense must be, the party opposing arbitration must prove the likelihood of incurring such costs and produce some specific information substantiating the alleged costs. *Green Tree Fin. Corp.*, 531 U.S. at 90; *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010) (orig. proceeding) (per curiam); *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 756; *see In re December Nine Co.*, 225 S.W.3d 693, 702 (Tex. App.–El Paso 2006, orig. proceeding). Specifically, the party opposing arbitration must produce evidence regarding the exact costs of arbitration, show that the costs are excessive, and show that they are not speculative in nature:

> Here, the de los Santoses testified, in two sworn affidavits, that the AAA charged a minimum $ 2,000 filing fee and a $ 250/day/party hearing fee, along with several other unspecified fees, for hearings before a

18

three-member panel.  But we need not decide whether these costs would be excessive.  As in *Green Tree*, the de los Santoses provided no evidence that the AAA would actually conduct the arbitration or charge the specified fees.  The Arbitration Addendum does not state that the AAA will conduct the arbitration, and it makes no mention of arbitration costs.  We also note that the most recent AAA commercial arbitration rules provide that "the AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees."  Moreover, in the event the de los Santoses do not avail themselves of FirstMerit Bank's choice of arbitrators, the FAA permits the trial court to choose an alternate set of arbitrators.  The de los Santoses also complain that the requirement of three arbitrators is inherently costly.  But again, without any specific information on what the costs will be, this requirement is not evidence of unconscionability.  Finally, in agreeing to the Addendum, Pete and Janie de los Santos agreed "that arbitration is a less expensive method of dispute resolution that decreases servicing costs of this loan . . . ."  Because the record contains no specific evidence that the de los Santoses will actually be charged excessive arbitration fees, we conclude that there is legally insufficient evidence that the plaintiffs would be denied access to arbitration based on excessive costs.

*In re FirstMerit Bank, N.A.*, 52 S.W.3d at 756-57; *see In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007) (orig. proceeding) ("[T]he plaintiffs presented no evidence other than a schedule of the American Arbitration Association's usual fees. This is not enough").

*Lawson v. Archer*, 267 S.W.3d 376, 384-85 (Tex. App.–Houston [14th Dist.] 2008, no pet.) (holding that "the record contains no evidence from which we may conclude that allocating the costs of arbitration renders the arbitration provision substantively unconscionable");

*TMI, Inc.*, 225 S.W.3d at 795-96 (denying arbitration where the claimants had not initiated arbitration, the arbitration provision did not limit the claimants' remedies or provide for fee splitting, the claimants had not presented specific evidence regarding their inability to afford arbitration other than conclusory statements, and the case presented "no public policies countervailing the fact that Texas law strongly favors arbitration"); *Olshan Found. Repair Co. v. Ayala*, 180 S.W.3d 212, 214-16, & n.4 (Tex. App.–San Antonio 2005, pet. denied) (determining that the trial court properly denied arbitration where the arbitration costs were

almost three times the amount of the original contract at issue, and the claimants' share of the arbitration costs was over twenty-five percent of the family's annual gross income). In short, to avoid arbitration based on the unconscionability of excessive costs, the party opposing arbitration must show that his ability to pursue his claim in the arbitral forum hinges upon his payment of the estimated costs. *In re Poly-America, L.P.*, 262 S.W.3d at 349.[2]

While we do not conclude that appellees have established unconscionability, we are mindful of the Texas Supreme Court's admonition that a "contract is unenforceable if, 'given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract.'" *Id.* at 348 (quoting *In re FirstMerit Bank*, 52 S.W.3d at 757, and citing *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002)); *see also Olshan Foundation Repair*, 180 S.W.3d at 214 (when reviewing "the trial court's decision concerning the unconscionability of an arbitration agreement . . . we defer to the trial court's factual determinations"). Applying this guideline in the context of the standard of review as discussed by the *In re Jebbia* and *In re Jim Walter Homes*

---

[2] In the employer-employee context, the Texas Supreme has further concluded that there is "nothing that would prevent arbitrators from fairly adjusting . . . employee cost provisions when necessary to allow full vindication of statutory rights in the arbitral forum." *In re Poly-America, L.P.*, 262 S.W.3d 337, 356-57 (Tex. 2008). According to the supreme court, an "arbitrator is better situated to assess whether the cost provision in this case will hinder effective vindication of [the claimant's] statutory rights and, if so, to modify the contract's terms accordingly." *Id.*; *see In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422-23 (Tex. 2010). We assume, without deciding, that such an argument is applicable in the context of arbitration other than between an employer and employee. While arbitrators are capable of considering the unconscionability of arbitral costs, deferring this issue to an arbitrator assumes, as a matter of circular logic, that the matter should be arbitrated. Instead, it would appear preferable that the issue that large arbitration costs could preclude litigants from effectively vindicating their rights in an arbitral forum should be submitted to, and decided by, the courts as a gateway matter. Moreover, deferring the decision as to the alleged excessiveness and unconscionability of the costs of arbitration to an arbitrator in a future proceeding, where the arbitrator might, or might not, adjust the costs, is speculative and fails to ensure that a claimant is not giving up substantive rights in an arbitral forum.

20

decisions, we conclude that appellees have raised an issue of material fact regarding unconscionability based on the foregoing matters. Accordingly, the trial court erred in failing to hold an evidentiary hearing on the arbitrability of the instant dispute. We sustain appellants' eleventh issue and overrule their sixth issue. Because we have reached this conclusion, we need not address appellees' other alleged defenses to the arbitration agreement, such as fraud, although we note that these other defenses may also require further evidentiary hearing. *See* TEX. R. APP. P. 47.1. We also need not address Bizmatch's additional issue on appeal. *See id.*

## V. CONCLUSION

Because the material facts necessary to determine the validity of the arbitration agreement were controverted by affidavit and other admissible evidence, the trial court was required to conduct an evidentiary hearing on the motion to compel arbitration. *See Jack B. Anglin Co., Inc.*, 842 S.W.2d at 269; *see also In re Whitfield*, 115 S.W.3d 753, 755 (Tex. App.–Beaumont 2003, orig. proceeding).

The petition for writ of mandamus in cause number 13-10-00150-CV is DENIED. In cause number 13-10-00125-CV, the order of the trial court is REVERSED and the cause is REMANDED. The trial court is instructed to conduct an evidentiary hearing consistent with this opinion. *See Jack B. Anglin Co.*, 842 S.W.2d at 269.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 31st
day of August, 2010.

21