Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-10-00631-CV

**LYDA SWINERTON BUILDERS, INC.**,
Appellant

v.

**POOLS BY BLUE HAVEN, INC.**,
Appellee

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-20145
Honorable Solomon Casseb, III, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  March 2, 2011

REVERSED AND REMANDED

The present appeal arises from the trial court's denial of a motion to compel arbitration filed by Lyda Swinerton Builders, Inc. ("Lyda").  We reverse the trial court's orders denying Lyda's motion to compel arbitration and remand the case to the trial court for further proceedings.

**BACKGROUND**

The facts pertinent to Lyda's appeal are largely undisputed. On July 14, 2006, Lyda entered into a construction contract with Riverwalk CY Hotel Partners, Ltd. ("Riverwalk") to construct a hotel known as the Marriott Courtyard at the San Antonio Riverwalk (the "Hotel"). The construction agreement between Lyda and Riverwalk contained provisions for the mediation of disputes. The agreement further provided that if formal mediation could not resolve a dispute, binding arbitration under the Construction Industry Rules of the American Arbitration Association was required.

Lyda subsequently entered into a subcontract (the "Subcontract") with Pools by Blue Haven, Inc. ("Blue Haven") on March 8, 2007, concerning the design/construction of a swimming pool and spa at the Hotel. The Subcontract contained various dispute resolution clauses, including:

15.    CLAIMS RESOLUTION PROCEDURE

(a) In the event of any dispute or claim between Contractor and Owner which directly or indirectly involves Subcontractor's Work, or in the event of any dispute or claim between Contractor and Subcontractor which directly or indirectly involves Subcontractor's Work, or in the event of any dispute or claim between Contractor and Subcontractor which directly or indirectly involves a claim against Owner for either additional compensation or an extension of time under the Contract Documents, Subcontractor agrees to be bound to Contractor and Contractor agrees to be bound to Subcontractor by all decisions, findings or determinations made by the person so authorized in the Contract Documents, by an administrative agency, court of competent jurisdiction, or arbitration panel, whether or not Subcontractor is a party to the proceedings before said person, agency, court or panel. If any dispute or claim involving Subcontractor is prosecuted or defended by Contractor, Subcontractor agrees to cooperate fully with Contractor and to furnish all documents, statements, witnesses and other information required by Contractor for such purpose and shall pay or reimburse Contractor for all expenses and costs, including reasonable attorney's fees, incurred in connection therewith to the extent of Subcontractor's interest in such claim or dispute. It is expressly understood and agreed in connection with the determination of such claims or disputes that, as to any and all work done and agreed to be done by Subcontractor, and as to any and all damages, if any,

incurred by Subcontractor in connection with the Project, Contractor shall never be liable to Subcontractor to any greater extent than Owner is liable to Contractor. If a dispute between Contractor and Subcontractor is not subject to the dispute resolution procedure set forth in the Contract Documents, then the dispute resolution procedure set forth in paragraphs (b) and (c) below shall apply.

(b) <u>MEDIATION.</u> Subcontractor agrees, upon the request of Contractor, to submit any claim or dispute to a neutral mediator and to negotiate in good faith to reach an agreement with respect to the dispute. Any such mediation proceeding shall be under the auspices of and governed by the rules of the Construction Industry Mediation Rules of the American Arbitration Association; or as may be agreed by the parties. In such event, neither party shall proceed with arbitration or litigation until the completion of mediation proceedings. The costs of the mediator shall be shared equally by the parties. Venue for the mediation shall be at the most practical location convenient to the parties and/or the location of the project.

(c) <u>ELECTION OF ARBITRATION OR LITIGATION.</u> In the event of a dispute between Contractor and Subcontractor, Contractor may elect to arbitrate such dispute in the manner provided below, or to litigate the dispute in a forum with jurisdiction to decide the dispute. Any arbitration proceeding shall be conducted in accordance with the Construction Industry Rules of the American Arbitration Association, provided, however, that only one arbitrator shall hear the dispute. The award rendered by the arbitrator shall be final and judgment may be entered upon in accordance with applicable law in any court having jurisdiction.

* * * *

(e) <u>FEDERAL ARBITRATION ACT.</u> The arbitration rights set forth herein shall be specifically enforceable under the Federal Arbitration Act, 9 U.S.C. 1, et seq., the parties agreeing that the transactions contemplated hereunder will have an effect on interstate commerce.

During the course of the construction of the Hotel, Lyda encountered various delays to the dissatisfaction of Riverwalk. In accordance with their contractual agreement, Lyda and Riverwalk proceeded to mediation in October and November 2008 to resolve their issues. The mediation between Lyda and Riverwalk was unsuccessful.

On January 9, 2009, Blue Haven submitted its initial pool/spa design for the Hotel for approval by the project architect. The project architect rejected Blue Haven's initial submittal and requested Blue Haven to resubmit its plans. Despite the project architect's rejection of Blue

Haven's initial pool/spa design, Blue Haven moved forward with the construction of the pool and spa without resubmitting its design for approval. Blue Haven completed construction of the pool and spa and proceeded to submit pay applications to Lyda on May 21, 2009 and June 25, 2009.

After completing the construction of the pool and spa, Blue Haven resubmitted its plans to the project architect for his approval on June 18, 2009 and, again, on August 5, 2009. The project architect rejected both sets of plans submitted by Blue Haven and refused to certify Blue Haven's pay applications.

In the meantime, Riverwalk filed a demand for arbitration against Lyda on July 9, 2009. Riverwalk's "demand for arbitration included an exhibit which listed three hundred and eighty-four (384) items of allegedly non-conforming work which included items relating to Blue Haven's work on the Project." Riverwalk and Lyda selected arbitrators and agreed on a scheduling order for the arbitration proceeding.

On October 8, 2009, Blue Haven sent a demand letter to Lyda requesting payment of $59,600 for the construction of the pool and spa at the Hotel. Blue Haven's letter sought payment of the entire amount past due and warned Lyda that it would "have no choice but to file suit against [Lyda] for breach of contract, among other causes of action" if Lyda failed to comply with its request for payment. Lyda refused to remit payment to Blue Haven and Blue Haven filed suit against Lyda on December 18, 2009 for breach of contract, quantum meruit, violations of Chapter 162 of the Texas Property Code, and a suit on sworn account. Lyda answered Blue Haven's allegations on January 22, 2010, providing a general denial as well as a verified denial as to the suit on sworn account.

On February 17, 2010, in connection with its ongoing arbitration with Riverwalk, Lyda filed a motion to join Blue Haven in the Lyda-Riverwalk arbitration. Lyda's motion claimed Blue Haven should be joined in the existing arbitration proceeding because Riverwalk's damages, if any, were attributable to the conduct of Blue Haven and the other named subcontractors. Blue Haven objected to Lyda's joinder request on March 12, 2010, arguing: (1) Lyda's "conduct in proceeding with . . . litigation without requesting mediation or arbitration until [after months of delay] evidences [Lyda's] knowing election to proceed with litigation"; (2) Lyda's "election to proceed with litigation, instead of arbitration, excuses Blue Haven from being bound by any arbitration provisions in [Lyda's] . . . subcontract"; (3) "having breached the Subcontract by failing to pay for Blue Haven's work, [Lyda] is not entitled to assert or avail itself of the arbitration provisions, the right of joinder, or the warranty of Blue Haven"; and (4) "[i]t is manifestly unjust to . . . require Blue Haven to entangle its payment claim in an arbitration involving numerous claims of several other claimants having no relationship whatsoever to the construction of the swimming pool."

An arbitrator was appointed pursuant to Rule R-7 of the American Arbitration Association's rules to decide Lyda's request to join Blue Haven in the existing arbitration proceeding. Following detailed briefing, the R-7 arbitrator concluded, on June 11, 2010, Lyda could not join Blue Haven as a party to its "existing arbitration" with Riverwalk because Blue Haven "did not contractually agree to joinder, and no controlling legal principles compel[s its] joinder." The R-7 arbitrator's order declined to address "whether Lyda waived its right to elect arbitration with Blue Haven" because the arbitrator considered the issue "moot."

On June 22, 2010, Blue Haven moved for partial summary judgment against Lyda in the trial court. Lyda responded by filing a motion to compel arbitration in the trial court on June 29,

2010, asking the court to compel the parties to arbitration in accordance with the terms of the Subcontract. Blue Haven countered that compelling the parties to arbitration was improper because "a Rule 7 Arbitrator ha[d] already ruled against Lyda on the issue of whether arbitration of Blue Haven's claims is proper." It also asserted Lyda waived its right to arbitrate by waiting until well after Blue Haven had initiated its lawsuit to raise its arbitration request. Blue Haven further argued that Lyda had waived its right to arbitrate because it participated in the litigation process prior to requesting arbitration and caused Blue Haven to incur unnecessary expenses during such time. Finally, Blue Haven claimed Lyda waived its right to arbitrate because it was first required to mediate with Blue Haven "as an express condition precedent before invoking the arbitration provision" of the Subcontract.

After hearing the parties' arguments, the trial court denied Lyda's motion to compel arbitration and issued orders on September 3 and 7, 2010 reflecting its ruling. Lyda subsequently perfected its appeal of the trial court's orders denying its motion to compel arbitration. Lyda thereafter responded to Blue Haven's motion for partial summary judgment and filed a motion requesting the trial court to reconsider its arbitration ruling. The trial court granted Blue Haven's motion for partial summary judgment on September 24, 2010, holding the contingent payment clause of the Subcontract is unenforceable. There were no other rulings issued by the trial court below.

## DISCUSSION

### A. Improper Collateral Attack

As a preliminary matter, Blue Haven contends the trial court correctly denied Lyda's motion to compel arbitration because an R-7 arbitrator has already ruled against Lyda and concluded that arbitration of Blue Haven's claims is improper. Blue Haven argues "Lyda's

attempt to compel arbitration despite the R-7 arbitrator's ruling is essentially an improper collateral attack of that ruling." We are, however, unpersuaded by this argument due to the nature of the order issued by the R-7 arbitrator.

Upon reviewing the R-7 arbitrator's order, it becomes evident that the arbitrator never addressed the issue of whether Lyda is entitled to compel Blue Haven to arbitrate in a proceeding solely between Lyda and Blue Haven. According to the R-7 arbitrator's order, the arbitrator denied Lyda's request to join Blue Haven in the existing Lyda-Riverwalk arbitration because Blue Haven "did not contractually agree to joinder[] and no controlling legal principles compel [its] joinder." The R-7 arbitrator's order further reflects that the arbitrator declined to reach the issue of whether "Lyda waived its right to elect arbitration with Blue Haven" as he considered the issue "moot." Because the R-7 arbitrator never addressed the issue of whether Lyda is entitled to compel Blue Haven to arbitrate in a proceeding solely between Lyda and Blue Haven, the record simply does not support Blue Haven's first contention on appeal.

## B. Failure to Fulfill Condition Precedent

Blue Haven also argues the trial court properly denied Lyda's motion to compel arbitration because the trial court may have found that mediation was a condition precedent to arbitration. Blue Haven asserts Lyda cannot compel it to arbitration because Lyda was required under the terms of the Subcontract to pursue mediation with Blue Haven before resorting to arbitration. Blue Haven's argument is, yet again, contradicted by the record.

Section 15(b) of the parties' Subcontract expressly refers to mediation and provides:

Subcontractor agrees, *upon the request of Contractor*, to submit any claim or dispute to a neutral mediator and to negotiate in good faith to reach an agreement with respect to the dispute. Any such mediation proceeding shall be under the auspices of and governed by the rules of the Construction Industry Mediation Rules of the American Arbitration Association; or as may be agreed by the parties. In such event, neither party shall proceed with arbitration or litigation

until the completion of mediation proceedings. The costs of the mediator shall be shared equally by the parties. Venue for the mediation shall be at the most practical location convenient to the parties and/or the location of the project.

(emphasis added). It is apparent from the plain language of the Subcontract that Lyda, as the Contractor, had the option to first proceed through mediation if a dispute arose between it and Blue Haven, the subcontractor. This option was at Lyda's discretion, but Lyda instead chose to dispense with mediation and opted to pursue arbitration as authorized by paragraph 15(c) of the Subcontract, which states "[i]n the event of a dispute between Contractor and Subcontractor, Contractor may elect to arbitrate such dispute . . . or to litigate the dispute in a forum with jurisdiction to decide the dispute." Blue Haven's contention that Lyda was required to fulfill a condition precedent prior to seeking arbitration thus lacks merit. *See Dallas Cardiology Assocs., P.A. v. Mallick*, 978 S.W.2d 209, 212-13 (Tex. App.—Texarkana 1998, pet. denied) (suggesting contractual language did not rise to the level of a condition precedent where it provided, "[a]ny dispute arising over the terms and conditions of this Agreement or in any manner relating to this Agreement which the parties are unable to resolve informally between themselves or by mediation shall be submitted, upon the motion of either party, to arbitration under the appropriate rules of the American Arbitration Association").

### C. Waiver

Lastly, Blue Haven argues the trial court properly denied Lyda's motion to compel arbitration because Lyda waived its right to arbitration. "[A] party waives an arbitration clause by substantially invoking the judicial process to the other party's detriment or prejudice." *Perry Homes v. Cull*, 258 S.W.3d 580, 589-90 (Tex. 2008). "Waiver is a legal question for the court based on the totality of the circumstances, and asks whether a party has substantially invoked the judicial process to an opponent's detriment, the latter term meaning inherent unfairness caused

by 'a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage.'" *In re Citigroup Global Mkts., Inc.*, 258 S.W.3d 623, 625 (Tex. 2008) (citation omitted). When assessing the totality of the circumstances, we may consider: whether the movant was the plaintiff (who chose to file in court) or the defendant (who merely responded); how long the movant waited before seeking arbitration; whether the movant knew of the arbitration clause all along; how much pretrial activity related to the merits rather than arbitrability or jurisdiction; how much time and expense has been incurred in litigation; whether the movant sought or opposed arbitration earlier in the case; whether the movant filed affirmative claims or dispositive motions; whether discovery would be useful in arbitration; and whether the movant sought judgment on the merits. *Perry Homes*, 258 S.W.3d at 591-92; *PER Group, L.P. v. Dava Oncology, L.P.*, 294 S.W.3d 378, 389 (Tex. App.—Dallas 2009, no pet.).

The party who asserts waiver of an arbitration clause bears a heavy burden. *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996). A strong presumption against waiver exists in the law, and any doubts regarding waiver are resolved in favor of arbitration. *In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex. 1998); *In re Multifuels, L.P.*, No. 01-09-00475-CV, 2010 WL 1981570, at *6 (Tex. App.—Houston [1st Dist.] May 7, 2010, orig. proceeding) (mem. op.). "Waiver of arbitration rights may be expressed or implied." *In re Multifuels*, 2010 WL 1981570, at *6.

Blue Haven maintains Lyda waived its right to arbitrate because Lyda substantially invoked the judicial process to Blue Haven's detriment. It asserts Lyda substantially invoked the judicial process by: (1) failing to make a pre-suit demand for arbitration; (2) failing to invoke the arbitration provision of the Subcontract in its answer; (3) filing an answer to Blue Haven's allegations and asserting a defense based on the contingent payment clause found within the

Subcontract; (4) going forward with the hearing on Blue Haven's motion for summary judgment; (5) electing not to include Blue Haven as a party to the Lyda-Riverwalk arbitration when such arbitration was originally commenced; and (6) waiting nearly six months after suit was brought to file its motion to compel arbitration. Even if we were to assume the aforementioned actions demonstrate Lyda substantially invoked the judicial process — a proposition we need not decide to resolve this appeal — Blue Haven has nonetheless failed to carry its burden of showing that it would suffer prejudice if compelled to arbitration.

As it did in its response to Lyda's motion to compel arbitration, Blue Haven argues on appeal that compelling it "to arbitration 'would cause prejudice to plaintiff' and 'would not be in the interest of justice.'" Blue Haven alleges it will suffer prejudice if compelled to arbitration because it has expended significant time and resources initiating and prosecuting the underlying suit. Absent from the record, however, is any evidence detailing the time and resources allegedly expended by Blue Haven in connection with this matter. This court has consistently recognized that generalized complaints about delay and expense, without evidence in support, are insufficient to establish prejudice. *See Global Fin. Servs., L.L.C. v. Estate of McLean*, No. 04-07-00627-CV, 2008 WL 372521, at *3 (Tex. App.—San Antonio Feb. 13, 2008, no pet.) (mem. op.); *Pennzoil Co. v. Arnold Oil Co.*, 30 S.W.3d 494, 499 (Tex. App.—San Antonio 2000, no pet.). Moreover, the Texas Supreme Court has acknowledged that "waiver of arbitration requires a showing of prejudice." *See Perry Homes*, 258 S.W.3d at 595. Because Blue Haven has made nothing more than generalized protestations about the time and resources it has expended, we conclude Blue Haven has failed to make the required showing of prejudice. *See In re Houston Auto M. Importers N., Ltd.*, No. 01-09-00625-CV, 2009 WL 4756218, at *3 (Tex. App.—

Houston [1st Dist.] Dec. 3, 2009, orig. proceeding) (mem. op.) (reversing trial court's denial of a motion to compel arbitration where plaintiff introduced no evidence of prejudice at the hearing).

### CONCLUSION

Based on the foregoing, we hold that the trial court erred in denying Lyda's motion to compel arbitration. We therefore reverse the trial court's orders denying Lyda's motion to compel arbitration and remand the cause to the trial court for further proceedings consistent with this opinion.

Karen Angelini, Justice