**AFFIRMED and Opinion Filed March 2, 2022**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

___

### No. 05-20-00123-CV
___

### IN THE INTEREST OF K.B., A CHILD

**On Appeal from the 254th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-08-04995**

## MEMORANDUM OPINION

Before Justices Carlyle, Smith, and Garcia
Opinion by Justice Garcia

Mother appeals the final order in a suit to modify parent–child relationship. We overrule her three issues and affirm.

### I.    Background

Mother and Father divorced in 2008 when their only child, daughter K.B., was two-and-a-half years old. They have litigated child-custody issues repeatedly since then.

### A.    Prior Modification Proceedings

In 2010, Mother filed a petition to modify parent–child relationship. She and Father signed a settlement agreement and filed it with the trial court. In December

2010, the trial court signed an agreed order disposing of Mother's petition. The 2010 Order recited that Mother and Father would attempt to reach an agreement regarding relocation and provided that the issue of relocation would be submitted to binding arbitration if agreement was not reached by April 30, 2012. The 2010 Order also contained a broader clause providing that "any legal disputes between the parties and/or the child, including an enforcement action," would be submitted to binding arbitration. The 2010 Order appointed Father and Mother joint managing conservators of K.B. and did not assign either of them the right to designate K.B.'s primary residence.

In May 2012, Father filed a petition to compel arbitration, alleging that he and Mother had failed to reach an agreement about relocation. Mother then filed a petition to modify the parent–child relationship in which she also requested arbitration if the parties could not reach agreement. The trial court referred the case to arbitration. After arbitration, the parties agreed to and signed another final modification order, which the trial judge signed in November 2012. The 2012 Order continued both parents' appointments as joint managing conservators and gave Mother the exclusive right to designate K.B.'s primary residence in Boston, Massachusetts; Dallas, Texas; or the contiguous counties of either city.

## B.    The Current Proceeding

In October 2013, Father filed a pleading seeking injunctive relief, an order compelling arbitration, and clarification or modification of the 2012 Order. As

–2–

grounds for injunctive relief, he alleged that Mother was threatening to file a suit affecting the parent–child relationship in Boston, Massachusetts.

In February 2017, Mother filed her own motion for referral to arbitration. She invoked the 2010 Order as authority for her request. The trial court granted Mother's motion and directed the parties to follow the arbitration process set forth in the 2010 Order.

The arbitrator heard the case over two days in November 2018.[1]

In April 2019, the arbitrator issued his ruling. He ordered, among other things, that both parents would remain joint managing conservators, that Mother had the right to designate K.B.'s primary residence in Massachusetts or Texas, and that Father would have possession of K.B. according to a modified Standard Possession Order for Parties Residing Over 100 Miles Apart.

Mother then filed a motion and an amended motion to vacate the arbitration award, both also requesting a de novo best-interest review. After a hearing conducted on November 18 and 27, 2019, the trial judge denied Mother's request to vacate the arbitration award and signed a final Order in Suit to Modify Parent–Child Relationship.

Mother timely appealed.

---

[1] In November 2018, Mother also filed a petition for writ of mandamus complaining about various rulings. We denied the petition. *See In re King*, No. 05-18-01373-CV, 2018 WL 6498650 (Tex. App.—Dallas Dec. 11, 2018, orig. proceeding) (mem. op.).

## II. Analysis

### A. Issue One: Did the trial court err by compelling the parties to arbitrate?

#### 1. The Parties' Contentions

In Mother's first issue, she argues that the trial court erred by compelling the parties to arbitrate their disputes.[2] She contends that (1) the 2010 Order did not contain a valid agreement to arbitrate and (2) even if the 2010 Order contained a valid agreement to arbitrate, it was revoked or superseded by the 2012 Order.

Father responds that (1) the 2010 Order was a written agreement to arbitrate; (2) the 2012 Order did not supersede, modify, or revoke the 2010 Order as an arbitration agreement; and (3) Mother also moved to compel arbitration and thus cannot now deny that there was an agreement to arbitrate.

#### 2. Applicable Law

If a party denies the existence of an agreement to arbitrate, the court determines the issue as a matter of law. *PER Grp., L.P. v. Dava Oncology, L.P.*, 294 S.W.3d 378, 384 (Tex. App.—Dallas 2009, no pet.). We review the trial court's legal determinations de novo and its factual determinations under a no-evidence standard. *Id*. When the relevant facts are undisputed, we are presented only with issues of law and review the trial court's order de novo. *Id*.

---

[2] Mother does not say how she brought this complaint to the trial court's attention, instead citing an exhibit showing that she made an objection to the arbitrator that "the Court did not have authority to refer us to arbitration." We assume without deciding that Mother preserved her complaint for appeal.

"On written agreement of the parties, the court may refer a suit affecting the parent-child relationship to arbitration. The agreement must state whether the arbitration is binding or non-binding." TEX. FAM. CODE ANN. § 153.0071(a).

"If the parties agree to binding arbitration, the court shall render an order reflecting the arbitrator's award unless the court determines at a non-jury hearing that the award is not in the best interest of the child." *Id*. § 153.0071(b).

### 3. Application of the Law to the Facts

### a. The 2010 Order contained an agreement to arbitrate.

Mother's first argument is that "the *2010 Order* does not contain an agreement of the parties to arbitrate. It provides that the Trial Court *orders* the parties to arbitrate." We disagree with Mother's argument.

The Family Code does not define "agreement," so we give the word its usual meaning: "A mutual understanding between two or more persons about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by two or more persons." *Agreement*, BLACK'S LAW DICTIONARY (11th ed. 2019).

The 2010 Order contains the following paragraph, which includes the arbitration clause:

> The parties agree and IT IS ORDERED that subject matter jurisdiction over any issue regarding [K.B.] will remain in Dallas County, Texas. IT IS FURTHER ORDERED, after the date of entry of this modification Order, any legal disputes between the parties and/or the child, including an enforcement action, will be submitted to binding

arbitration with a family law arbitrator in Dallas County, Texas with the arbitrator selection process as set forth above.

Even if we disregard the first three words of the paragraph ("The parties agree") on the theory that they do not apply to the paragraph's second sentence, which contains the arbitration clause, other features of the 2010 Order establish that the entire order constitutes an agreement between Mother and Father:

- The 2010 Order is entitled "Agreed Order in Suit Affecting the Parent-Child Relationship."

- The 2010 Order recites, "[Mother] has agreed to the terms of this Order to the extent permitted by law as evidenced by her signature and her attorney of record's signature[.]" It contains a similar recitation about Father.

- Both Father and Mother signed the 2010 Order under the legend "APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE."

Given these features, we conclude as a matter of law that the totality of the 2010 Order shows the mutual assent of the parties to its terms—including the arbitration clause. *See In re R.S.*, No. 05-17-00848-CV, 2019 WL 1578249, at *4 (Tex. App.—Dallas Apr. 12, 2019, no pet.) (mem. op.) ("[T]he phrase 'approved as to form and substance' may describe an agreed judgment when coupled with additional recitations in the judgment."). Thus, the 2010 Order is a written agreement by Mother and Father to arbitrate, even though it is also an order as well. *See Sanderlin v. Sanderlin*, 929 S.W.2d 121, 122 (Tex. App.—San Antonio 1996, writ denied) ("An agreed judgment is both a contract and a judgment . . . .").

### b. The 2012 Order did not revoke the parties' agreement to arbitrate.

We also reject Mother's contention that the 2012 Order superseded or revoked the parties' arbitration agreement recited in the 2010 Order. She points to no superseding or revoking language in the 2012 Order, instead arguing that the 2012 Order necessarily must have revoked the 2010 Order because the 2012 Order was the result of a contested, adversarial lawsuit brought for the purpose of modifying the 2010 Order. She also contends that the parties mutually agreed to revoke the prior agreement when they filed independent motions to modify the 2010 Order. Finally, Mother acknowledges that the 2012 Order provides "that all other terms of the prior orders not specifically modified in this order shall remain in full force and effect," but she argues that the 2012 Order nevertheless revoked any prior arbitration agreement and did not create a new agreement to arbitrate.

We conclude that the 2012 Order preserved rather than revoked the parties' arbitration agreement recited in the 2010 Order. First, we note that the 2012 Order was an agreed order, having been signed by both parties under the legend "READ, APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE." Moreover, the 2012 Order, which was signed after an arbitration, contained the following recitation:

> The Court finds the Arbitrator issued an award dated July 26, 2012. The Court further finds, subsequent to the issuance of the Arbitrator's award, *the parties agreed to the provisions of this Order and request this agreement be made an order of this Court*.

(Emphasis added.) Finally, the 2012 Order expressly reaffirmed that the court's prior orders remained in effect unless specifically modified: "**IT IS FURTHER ORDERED** that all other terms of the prior orders not specifically modified in this order shall remain in full force and effect."

In sum, the parties agreed that all prior orders would remain in effect unless specifically modified in the 2012 Order. The 2012 Order did not specifically modify the arbitration agreement recited in the 2010 Order. Thus, the parties' arbitration agreement recited in the 2010 Order remained in effect, and the 2012 Order did not revoke or supersede the earlier arbitration agreement. *See Valerus Compression Servs., LP v. Austin*, 417 S.W.3d 202, 210 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("[A]n agreement to supersede or revoke an earlier arbitration agreement must do so in unequivocal terms such that the subsequent agreement cannot be harmonized with the arbitration provision."); *see also PER Grp.*, 294 S.W.3d at 385–86 (concluding that parties who made new agreement agreed to continue to be bound by arbitration clause in previous agreement).

### 4. Conclusion

Having rejected Mother's arguments on their merits, we need not address Father's counter-argument that Mother forfeited issue one by making her own motion to compel arbitration. We overrule Mother's first issue on appeal.

**B.    Issue Two: Did the trial court err by refusing to vacate the arbitrator's award pursuant to Texas Civil Practice and Remedies Code § 171.088(a)(3)(C)?**

In her second issue, Mother argues that the trial court erred by denying her motion to vacate the arbitrator's award pursuant to Texas Civil Practice and Remedies Code § 171.088(a)(3)(C), which concerns an arbitrator's refusal to hear material evidence.[3] We reject her argument for the following reasons.

**1.    Applicable Law**

We review a trial court's ruling confirming or vacating an arbitration award de novo based on the entire record before us. *Washburne v. Lynn Pinker Cox & Hurst, LLP*, No. 05-19-00716-CV, 2020 WL 4034978, at *3 (Tex. App.—Dallas July 17, 2020, pet. denied) (mem. op.). However, arbitration awards are entitled to great deference, and we indulge all reasonable presumptions to uphold an award and none against it. *Id*.

The Texas Arbitration Act provides that, on application of a party, the trial court shall vacate an arbitration award if the arbitrator "refused to hear evidence material to the controversy."[4] TEX. CIV. PRAC. & REM. CODE § 171.088(a)(3)(C). To vacate an arbitration award based on an arbitrator's error in excluding evidence, a

---

[3] Father argues that Mother failed to preserve error because Mother's trial-court filings seeking vacatur did not raise refusal to hear material evidence as a ground. We assume without deciding that Mother preserved error.

[4] Father points out that at the hearing of Mother's motion to vacate, Mother's counsel asserted, "We were not operating under the TAA." Nevertheless, we assume without deciding that § 171.088(a)(3)(C) applies in this case.

party must show that the error so affected the party's rights that he or she was deprived of a fair hearing. *Elite Framing v. BBL Builders, L.P.*, No. 05-15-01430-CV, 2016 WL 3346041, at *3 (Tex. App.—Dallas June 15, 2016, pet. denied) (mem. op.).

### 2. Application of the Law to the Facts

Mother's argument hinges on her "Motion to Compel Taking of Testimony in Another State," which she filed a few months before the arbitration hearing. She contends that her motion (1) identified numerous Massachusetts witnesses with relevant knowledge about K.B. and (2) showed that she had no ability to compel their testimony without the authority of the Texas judicial system (wielded by the arbitrator). Yet, the arbitrator denied her motion, and the trial court later denied Mother's motion to overturn that ruling. On appeal, Mother argues, "[b]ecause the Arbitrator denied [Mother's] motion to compel, it is fair to say that the Arbitrator refused to hear evidence material to the controversy."

We conclude that Mother has not shown error. In her motion to compel testimony, Mother sought an order pursuant to Family Code § 152.111 "to allow the taking of testimony of necessary witnesses before a designated court in Massachusetts." Moreover, she specifically rejected the possibility of allowing the witnesses to testify "by electronic means" because "[t]he limitation on time and the possibility of electronic equipment failure could radically impair the ability to completely present evidence that is critical to this proceeding."

Father's response raised several objections to Mother's motion to compel, contending among other things that deposing the Massachusetts witnesses or allowing them to testify live by electronic means would be adequate to address Mother's concerns. He pointed out that § 152.111 specifically mentions depositions and remote testimony by telephone, audiovisual, or other electronic means as appropriate methods of securing testimony from witnesses in other states. *See* FAM. § 152.111(b).

In her reply brief to the arbitrator, Mother argued that depositions would be inadequate because of "the costs of depositions and the procedural difficulties with obtaining transcripts, admitting deposition testimony, and inaccuracies in the transcript." She raised "[t]he limitation on time and the possibility of electronic equipment failure" as reasons not to allow the taking of testimony by electronic means. And she argued that "in the interest of due process, judicial economy, and the best interest of [K.B.], *the arbitrator should attend and preside over the taking of the testimony in Massachusetts* instead of requiring depositions to be taken." (Emphasis added.)

We conclude that Mother has not shown that the arbitrator violated § 171.088(a)(3)(C). That statute makes it improper for an arbitrator to "refuse[] to hear evidence material to the controversy." CIV. PRAC. & REM. § 171.088(a)(3)(C). The statute's plain meaning is that the arbitrator cannot refuse to hear material evidence offered at the hearing—not that the arbitrator must cooperate with a party's

preferred process for procuring witness testimony, much less travel to another state to hear such testimony. *See Elite Framing*, 2016 WL 3346041, at *2–3 (reviewing a § 171.088(a)(3)(C) complaint about arbitrator's refusal to admit evidence offered at arbitration hearing). Mother does not claim that the arbitrator refused to hear any evidence that Mother actually proffered at the arbitration hearing.

Because Mother has not shown that the arbitrator refused to hear any proffered evidence—much less any proffered evidence "material to the controversy"—she has not shown that the trial court erred by denying her motion to vacate to the extent the motion was based on § 171.088(a)(3)(C).

Mother also complains that at the motion-to-vacate hearing the trial court denied her a fair opportunity to prove the materiality of the evidence from out-of-state witnesses that Mother wanted to present at the arbitration. But because Mother has not shown that the arbitrator refused to hear any proffered evidence, any trial-court error in this regard was harmless. *See* TEX. R. APP. P. 33.1(a).

### 3. Conclusion

We overrule Mother's second issue on appeal.

**C. Issue Three: Did the trial court abuse its discretion by denying Mother's motions to transfer and limiting Mother's ability to gather and present evidence from K.B.'s home state of Massachusetts?**

In her third issue Mother complains, in a single-paragraph argument, that the trial court disregarded unidentified "guiding rules and principles" of Family Code Chapter 152 by denying Mother's motions to transfer the case to Massachusetts and

limiting Mother's ability to gather and present evidence from Massachusetts. She asserts that her third issue is governed by an abuse-of-discretion standard of review.

To the extent Mother seeks appellate review of the trial court's rulings on her motions to transfer, her complaint is inadequately briefed. She cites no legal authorities pertinent to such motions, offers no governing legal rules, and does not apply the law to the facts of this case. *See* TEX. R. APP. P. 38.1(i); *Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895–96 (Tex. App.—Dallas 2010, no pet.). Thus, any complaints about the rulings on her motions to transfer are forfeited.

And to the extent Mother complains that the trial court did not grant Mother's motion to allow Massachusetts witnesses to testify in Massachusetts, we have already discussed that contention above in connection with Mother's second issue. After the arbitrator denied Mother's motion, Mother sought a de novo "best interest review" of the arbitrator's ruling, and the trial court confirmed the arbitrator's order. Although Mother asserts that the trial court's ruling was arbitrary and unreasonable, we are unpersuaded. Mother has not shown that she could not have adequately presented testimony from those witnesses via depositions or via live testimony transmitted telephonically or by videoconference.[5] *See* FAM. § 152.111(b) (expressly contemplating that witness testimony may be presented by deposition or by electronic means).

---

[5] We assume without deciding that it could have been appropriate for the trial court to intervene in a procedural dispute in an ongoing arbitration.

For these reasons, we overrule Mother's third issue.

### III.  Conclusion

We affirm the trial court's Order in Suit to Modify Parent-Child Relationship.


/Dennise Garcia/
DENNISE GARCIA
JUSTICE

200123F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF K.B., A
CHILD

No. 05-20-00123-CV

On Appeal from the 254th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DF-08-04995.
Opinion delivered by Justice Garcia.
Justices Carlyle and Smith
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Paul Bhella recover his costs of this appeal from appellant Louise King.

Judgment entered March 2, 2022.